898 F.2d 149
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Harry S. VAN SCOYOC; Patricia A. Van Scoyoc, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 89-2633.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 5, 1989.
Decided: Feb. 15, 1990.
 
 Appeal from the United States Tax Court. Jules G. Korner, III, Tax Court Judge. (Tax Ct. No. 11271-86)
 John J. Mullenholz (Thomas J. O'Rourke, Neill, Mullenholz and Shaw, on brief), for petitioners.
 Thomas Richard Lamons (Shirley D. Peterson, Assistant Attorney General, Gary R. Allen, Gilbert S. Rothenberg, Tax Division, United States Department of Justice, on brief), for respondent.
 USTC
 AFFIRMED.
 Before ERVIN, Chief Judge, and MURNAGHAN and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Harry S. and Patricia A. Van Scoyoc appeal the decision of the Tax Court that their yacht chartering venture was an activity not engaged in for profit. I.R.C. Sec. 183 (West Supp.1989). They also appeal the decision of the Tax Court that they are liable for a substantial understatement penalty because there was not substantial authority to support their claimed deductions. I.R.C. Sec. 6661(b)(2)(B)(i) (West 1989). We affirm.
 
 I.
 
 2
 In the fall of 1981, Harry Van Scoyoc[1] became interested in acquiring a sailboat for use in the charter business. Van Scoyoc discussed the investment potential of the charter business with his financial advisor, friends, and others. From these discussions and his own research, he determined that sailboats had been rapidly appreciating in value since the mid-1970's. Although his information revealed that a charter business would not immediately realize a positive cash flow, he concluded that favorable tax laws and the appreciation in the value of a sailboat would offset early losses. Van Scoyoc also believed a sailboat would be useful in entertaining clients and business associates.
 
 
 3
 In December 1981 the Van Scoyocs purchased a 36-foot sailboat for $101,780 from Nautilus Yacht Sales (Nautilus). In February 1982 the Van Scoyocs purchased a slip in the West River Yacht Harbor for $22,500 from Nautilus. Both the sailboat and the slip were purchased under a sale-leaseback agreement. Under the agreement the sailboat was leased to Nautilus for three years for a total of $20,356, with this amount credited as a down payment on the sailboat. The remainder of the purchase price was financed with a full recourse loan at 17 percent interest over a period of five years. Similarly, the slip was leased to Nautilus for two years and ten months for a total of $4,500, with this amount credited as a down payment on the slip. The remainder of the purchase price of the slip was financed at 18 percent interest over a period of five years. Nautilus provided financing, insurance, charter management, documentation services, and routine maintenance of the sailboat. The Van Scoyocs were entitled to 21 days of personal use per year.[2]
 
 
 4
 The Van Scoyocs' tax return for the 1982 tax year showed gross income from the chartering activity of $24,856,[3] operating expenses of $4,597, and depreciation of $17,742, resulting in net income from the chartering activity of $2,517. Their tax return for the 1983 tax year showed gross income from the chartering activity of $1,200, operating expenses of $4,650, and depreciation of $24,642 for a total tax loss of $28,092.[4] The Commissioner of Internal Revenue determined: (1) that the Van Scoyocs' operating expense and depreciation deductions and investment tax credit were disallowed because the charter business was not an activity engaged in for profit; (2) that there was a deficiency in their income tax for 1982 and 1983; (3) that the Van Scoyocs were liable for an addition to tax for negligence, I.R.C. Sec. 6653(a) (West 1989); and (4) that the Van Scoyocs were liable for an addition to tax because of a substantial understatement of tax, I.R.C. Sec. 6661. The Van Scoyocs petitioned the Tax Court for a redetermination of the deficiency. The Tax Court sustained the Commissioner's determinations disallowing the deductions and the investment tax credit and imposing the substantial understatement penalty. It also determined that the Van Scoyocs were not liable for the negligence penalty, a determination which the Commissioner does not contest on appeal.
 
 II.
 
 5
 We recently addressed the application of I.R.C. sections 183 and 6661 in the context of a yacht chartering venture. See Antonides v. Commissioner, No. 89-2632 (4th Cir. Jan. 11, 1990). The decision of the Tax Court is reviewed under the clearly erroneous standard unless "there has been an erroneous interpretation of the applicable legal standard." Faulconer v. Commissioner, 748 F.2d 890, 895 (4th Cir.1984). The Van Scoyocs contend that the Tax Court erroneously interpreted the applicable legal standard by ruling that an activity is not engaged in for profit for purposes of I.R.C. Sec. 183 unless there is a predominant purpose and intention to make a profit. We rejected this argument in Antonides. Following our reasoning in Antonides, we hold that the Tax Court did not erroneously interpret the applicable legal standard under section 183. Accordingly, we apply the clearly erroneous standard of review.
 
 
 6
 The Tax Court stated that the determination of whether an activity is engaged in for profit must involve consideration of all relevant facts and circumstances. The court noted that the regulations under section 183 provide a nonexclusive list of factors that should be considered. See Treas.Reg. Sec. 1.183-2 (1972). It found that based on the cash flow analysis prepared by Nautilus and relied on by Van Scoyoc, the Van Scoyocs could not have anticipated making a profit on their operation for at least five years. The court concluded that while the Van Scoyocs would have liked to make a profit, it was not their actual motivation for acquiring the sailboat. Although the Tax Court speculated that the Van Scoyocs' likely motivation was to enjoy significant tax benefits, we need not determine whether this was the Van Scoyocs' true purpose. It is sufficient for purposes of section 183 that the Tax Court determined that the activity was not engaged in for profit.
 
 
 7
 The Van Scoyocs contend that the Tax Court erred by failing to discuss any of the factors listed in the section 183 regulations. Although the Tax Court did not list and address each of the factors seriatim, it is apparent from its opinion that it did consider the factors and, on the basis of all the facts and circumstances, determined that the Van Scoyocs were not engaged in the yacht chartering activity for profit. See Antonides, slip op. at 10 (Tax Court need not explicitly list and address factors listed in section 183 regulations). Based on our review of the record, we cannot say that this finding was clearly erroneous.
 
 III.
 
 8
 The Tax Court also determined that the tax treatment of the deductions arising from the yacht chartering activity was not supported by substantial authority. Van Scoyoc contends that the issue of whether section 183 disallows the deductions is a factual one and that an analysis of the factors contained in the regulations under section 183 provides support for the tax treatment of the chartering activity. However, the Tax Court found that the Van Scoyocs' claim that the expenses of the activity were allowable deductions was not supported by section 183, a finding we cannot say was clearly erroneous.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 Patricia Van Scoyoc, Harry Van Scoyoc's wife, is a party because she filed a joint tax return with her husband in 1982 and 1983
 
 
 [2]
 Van Scoyoc testified that he used these "personal use" days by either donating use of the sailboat to charity or entertaining clients
 
 
 [3]
 This amount represents the three-year lease payment from Nautilus on the sailboat and the two-year, ten-month lease payment on the slip
 
 
 [4]
 Although only the 1982 and 1983 tax years are at issue, the government offered evidence to show that the total deductions for the tax years 1982-1986 were $222,101 and the total gross receipts were $42,101, resulting in a total tax loss of approximately $180,000